IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| TODRICK MORRIS, TDCJ No. 854732, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 7:17-CV-034-O-BP |
| LT. ANTHONY BRIA, *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND OPINION

Before the Court are Defendants Shea Sides and Juli McCaffity's Motion for Summary Judgment (ECF No. 90) with Brief (ECF No. 90-1) and Appendix (ECF No. 90-2) in support, filed February 2, 2018; and "Plaintiff Opposition (Response) to Defendants Sides and McCaffity's Motion for Summary Judgment" (ECF No. 109), filed March 19, 2018. The parties consented to have the United States Magistrate Judge conduct all proceedings in this case, up to and including trial and order of final judgment. ECF No. 85. After considering the pleadings and applicable law, the Court **GRANTS** Defendants Shea Sides and Juli McCaffity's Motion for Summary Judgment (ECF No. 90).

## BACKGROUND

**I.  Factual Background**

Plaintiff Todrick Morris ("Morris") brings this action under 42 U.S.C. § 1983 for violation of his constitutional rights. ECF No. 38 at 3–4. He claims excessive force, retaliation for engaging in protected conduct, failure to protect, conspiracy, and deliberate indifference to his medical needs. *Id.*

Morris is an inmate in custody of the Texas Department of Criminal Justice ("TDCJ") and is currently incarcerated in the Allred Unit in Iowa Park, Texas. ECF No. 38 at 1. Defendants Lt. Anthony Bria ("Bria"), Sgt. Tommy Cates ("Cates"), Sgt. Larry Goatley, Jr. ("Goatley"), Justin Odom ("Odom"), Scott Szczepinski ("Szczepinski"), Richard Arrieta, Jr. ("Arrieta"), John M. Cerda, Jr. ("Cerda"), Michael A. Cossey ("Cossey"), and Patrick W. Morris ("Officer Morris") (collectively, the "Guard Defendants") are correctional officers at the Allred Unit. ECF No. 99 at 4. Defendants Shea Sides ("Sides") and Juli McCaffity ("McCaffity") (collectively, the "Nurse Defendants") are nurses at the Allred Unit. ECF No. 90-1 at 3.

The following facts are taken from Morris's Second Amended Complaint, which Morris verified by a signature to be true under penalty of perjury. ECF No. 38 at 16.

On February 18, 2017, Bria, Cates, and Goatley allegedly came to Morris's cell at Pod J of the Allred High Security Unit and confronted Morris about filing grievances. *Id.* at 5. According to Morris, they became angry with him during the confrontation and told him that they were going to beat him. *Id.* They then left the pod. *Id.*

About forty-five minutes later they returned to his cell with a five-man extraction team consisting of Arrieta, Szczepinski, Odom, Officer Morris, and Cossey (collectively the "Team Defendants"). *Id.* Cerda also came with them, as the video camera operator. *Id.* at 6. Morris claims he was in compliance with all TDCJ rules and regulations up to this point. *Id.* When he saw the team, and due to the threats that Bria, Cates, and Goatley had allegedly made, Morris states that he feared for his life and believed he was about to be harmed. *Id.* He then covered his cell door and windows and placed a magazine in the cell door to prevent the door from being able to be opened. *Id.* Morris believed that, because of his actions, the correctional officers would be required to summon a higher-ranking officer to the scene, and Morris would then be able to communicate

his fear of harm to the higher ranking official. *Id.* However, no higher-ranking official came to the scene. *Id.*

Goatley sprayed chemical agents three times through the food slot in the cell door. *Id.* Morris claims that after each spray, he went to his cell door, moved the obstruction he had put there, and told Goatley and Bria that he would comply with orders to submit to a strip search and hand restraints. *Id.* Morris again requested the presence of a higher ranking official. *Id.* According to Morris, Bria and Goatley ignored Morris's attempts to surrender himself and instead forced the cell door open. *Id.* The Team Defendants then went into Morris's cell. *Id.* One of the Team Defendants, purportedly Officer Morris, struck Morris with a shield. *Id.*; ECF No. 111 at 4. When he was struck, Morris was standing in the doorway area of his cell by the shower. ECF No. 38 at 6.

Morris alleges that he was then forced further back into the cell toward the shower and toilet area, and the Team Defendants struck him several times in the face and head. *Id.* at 7. He claims that he was not resisting at this point and started to dive to the cell floor to surrender. *Id.* He was then slammed or tackled face-down to the floor in the toilet and shower area, with his head near the front of the cell door opening and wall fixture. *Id.* Morris then placed his hands behind his back to surrender and loudly stated that he was not resisting. *Id.* At this point the Team Defendants allegedly punched him in the head and face, choked him, banged his head into the floor twice, gouged his eyes, and bent his hands, arms, and legs. *Id.* The Team Defendants then placed Morris in hand restraints. *Id.* Morris alleges that, during the incident, the Team Defendants falsely called out "quit resisting" when he was not resisting. *Id.*

Morris alleges that Bria and Goatley intentionally stood in the cell door to obstruct the view of the video camera, which allowed the Team Defendants to assault Morris. *Id.* at 8. Morris alleges

3

that Bria then stepped into Morris's cell and struck Morris with a chemical agent canister in Morris's left-eye area and sprayed Morris with the chemical agent. *Id.* Morris alleges that he was still not resisting. *Id.* Morris claims that he was continually struck and choked for several more minutes, during which period he lost consciousness twice. *Id.*

Bria then called Cerda to come closer to the cell with the video camera. *Id.* The Team Defendants cut off Morris's clothing and took him out of his cell onto the walkway to stand facing the wall. *Id.*

Bria and Goatley then summoned medical personnel to the scene. *Id.* Sides arrived, approached Morris, and asked him if he had any injuries. *Id.* Morris responded that he had injuries to the left and right sides of his face, his left eye, his head, and his left hand. *Id.* at 9. Morris claims that he was dizzy and disoriented from the attack and had several visible injuries, including swollen lips as well as swelling and bleeding on his head and face. *Id.* Morris alleges that Sides medically cleared Morris on the video recording and told Goatley that Morris was okay. *Id.* Morris alleges that Sides did not assess his injuries or their severity at this time. *Id.* According to Morris, several other inmates then began cursing and yelling at Sides from their cells that she needed to give Morris medical treatment and they were witnesses to her denying care to Morris. *Id.* Goatley took photos of Morris and stated on camera that Sides had medically cleared Morris to be placed back into his cell once it was clear of all state and personal property. *Id.* The other inmates continued to yell at Sides. *Id.* Morris alleges that Sides then began to whisper to Goatley. *Id.* She then reconsidered her decision to medically clear Plaintiff. *Id.*

Bria and Goatley then escorted Morris away from his cell to the 2-Row medical triage area. *Id.* at 10. McCaffity joined Sides there. *Id.* Morris then informed the Nurse Defendants of the injuries to his face, left eye, left hand, lips, mouth, and head. *Id.* His left eye was swollen shut. *Id.*

4

Morris also told the Nurse Defendants that he had a head injury and a possible concussion, as well as dizziness, nausea, and blurred vision. *Id.* According to Morris, the Nurse Defendants assessed the swelling and lacerations on his head, his swollen left eye and the left side of his face, and his lips and mouth. *Id.* Morris then asked the Nurse Defendants if they could flush the chemical agents from his eyes, but they refused to do so. *Id.* Morris alleges that the Nurse Defendants did not assess his left-hand injury or his possible head injury and concussion with its possible symptoms. *Id.* at 11. The Nurse Defendants then medically cleared Morris without providing any treatment. *Id.*

Bria, Goatley, and the Team Defendants returned Morris to his cell. *Id.* There the Team Defendants laid him on the floor and removed his hand restraints. *Id.* Morris alleges that, while they were removing his restraints, they bent, applied excessive pressure to, and twisted his legs, ankles, hands, and arms. *Id.* Morris claims that he was not resisting at this point. *Id.* The guards exited his cell, and Morris lay on the floor until the cell door was secured shut. *Id.* Morris then told Bria and Goatley that the Team Defendants had further injured his left hand and right leg and ankle when removing the restraints. *Id.* Morris alleges that Bria and Goatley ignored Morris's complaints and terminated the use-of-force incident. *Id.*

Morris alleges that Bria, Goatley, and Cates then disconnected Morris's air vents, shut off his cell's water, and placed a mattress directly in front of the cell, which prevented fresh air circulation. *Id.* Morris also alleges that Bria threatened Morris's neighbor in cell J-228 with a beating if the neighbor assisted Morris in any way. *Id.* at 11–12. Morris alleges that after he was left in his cell, he bled for hours, was dizzy and vomited from the head trauma, had burning in his eyes from the chemical agents, and was without pain medication for over forty-eight hours. *Id.* at 12. Morris claims that the guards ignored him when he told them he had vomited. *Id.*

Morris submitted a sick call request on February 18, 2017, after the use-of-force incident. *Id.* On February 20, 2017, unit medical provider Lawrence Doty saw Morris for medical treatment. *Id.* Morris claims that at this time he still had dried blood on his body, and he had swelling on his left eye, face, lips, head, right leg and ankle, and left hand. *Id.* Lawrence Doty ordered X-rays of Morris's face and left hand. *Id.* The X-rays revealed that Morris had a fracture "involving the proximal metaphysis of the second proximal phalanx on the left hand." *Id.* Morris was issued pain medication for the first time at this point. *Id.* Morris alleges that his right leg and ankle as well as his head trauma remained unassessed. *Id.* On the evening of February 20, 2017, Morris informed Sides of the unassessed conditions, and Sides instructed him to submit a sick call, which Morris did on that date. *Id.* Morris does not state the results of this second sick call. *See id.* Morris alleges that he has permanent deformities to his left hand, a loss of range of motion and continuous pain in his left hand, constant blurred vision, vision loss in his left eye, damage to his teeth, permanent scarring to his head, constant headaches, and continuous pain and swelling in his right leg and ankle. *Id.*

Morris attached to his verified complaint a signed affidavit from another prisoner, Porfirio Elguezabal, ("Elguezabal"). ECF No. 38-1. Elguezabal swears that he was a witness to the use-of-force incident and the surrounding events, and his statements support Morris's statements in the complaint. *Id.* at 2–3. Elguezabal does not make any statements concerning the period Morris spent in the 2-Row medical triage unit. *See id.*

## II. Procedural Background

Morris filed his original complaint on March 20, 2017. ECF No. 1. He filed a first amended complaint on May 15, 2017. ECF No. 18. He filed his "Second and Final Amended Complaint" on June 27, 2017. ECF No. 38. In this second amended complaint, Morris stated the following

claims: the Guard Defendants used excessive force against him; Bria, Goatley, and Cates conspired to deny him his constitutional rights; Cerda conspired with all the other Defendants to deny him his constitutional rights; Goatley, Cates, and Cerda did not intervene to stop the other Defendants' excessive use of force; the Nurse Defendants conspired to deprive him of his constitutional right to medical treatment; and the Nurse Defendants were deliberately indifferent to his serious medical needs. *Id.* at 13–15.

The Nurse Defendants filed their Motion for Summary Judgment on February 2, 2018. ECF No. 90. They attached an appendix containing the use-of-force report, Morris's medical records, and video and photographic evidence of the use-of-force incident. ECF No. 90-2. Morris filed a response to the Motion for Summary Judgment on March 19, 2018. ECF No. 109. He attached an appendix containing photographs of his injuries and portions of his medical records. ECF No. 109-1. He also requested that the Court incorporate previously filed affidavits from himself and from other prisoners who witnessed the incident. ECF No. 109 at 8. The Nurse Defendants did not file a reply.

**LEGAL STANDARD**

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

7

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To meet this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The court must construe all facts and inferences in the light most favorable to the nonmoving party when considering a motion for summary judgment. *See Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). The citations to evidence must be specific, and "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Local Civil Rules of the Northern District of Texas 56.5(c).

Courts must employ summary judgment cautiously. *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980). In particular, in prisoner *pro se* cases courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Id.* at 311; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that a *pro se* plaintiff's pleadings should be liberally construed). Courts should take into account that "[i]ndigent prisoners are

8

hampered in their access to the proof necessary to ward off summary judgment." *Murrell*, 615 F.2d at 310.

## ANALYSIS

The Nurse Defendants make three arguments in their Motion for Summary Judgment: (1) they are entitled to Eleventh Amendment immunity to the extent that they are sued in their official capacities, (2) they were not deliberately indifferent to Morris's medical needs, and (3) they are entitled to qualified immunity for each of Morris's claims.

### I. The Eleventh Amendment bars Morris's claims against the Nurse Defendants to the extent that they are sued in their official capacity.

Under the Eleventh Amendment, states may not be sued in federal court unless they unequivocally consent to the suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984). This immunity extends to state agencies and, if the relief sought would operate against the state, to state officials. *Id*. at 101. Title 42 U.S.C. § 1983 does not override the States' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). However, the Eleventh Amendment does not bar the recovery of damages from state officials sued for violations of § 1983 in their personal capacities. *See, e.g., Smith v. Wade*, 461 U.S. 30, 34–35 (1983) (upholding an award of punitive and compensatory damages against prison officials in a § 1983 suit); *Stokes v. Delcambre*, 710 F.2d 1120, 1126 (5th Cir. 1983) (same); *Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 773 (N.D. Miss. 2012), *aff'd*, 592 Fed. App'x 260 (5th Cir. 2014) (holding that the Eleventh Amendment does not bar monetary relief in a § 1983 suit as any relief would "impact only the individually named Defendants").

Morris states that he is suing all Defendants in their individual and official capacities. ECF No. 38 at 5. The Nurse Defendants work for TDCJ, a state agency. ECF No. 99 at 25. Therefore

they are entitled to Eleventh Amendment immunity. *Pennhurst*, 465 U.S. at 101. Morris cannot recover damages from the Nurse Defendants in their official capacities.

**II.     The Nurse Defendants were not deliberately indifferent to Morris's medical needs.**

Title 42 U.S.C. § 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment because its prohibition against cruel and unusual punishment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968). Deliberate indifference to medical needs only amounts to an Eighth Amendment violation if the prisoner's needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–104). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

"Deliberate indifference is an extremely high standard to meet. . . . [T]he plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v.*

*McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193–95 (5th Cir.1993)).

To prove an Eighth Amendment violation, a prisoner must (1) "prove objective exposure to a substantial risk of serious harm" and (2) "show that prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d at 345–46. Under the second, subjective prong, "a prison official acts with deliberate indifference 'only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it.'" *Id.* at 346 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

The record in this case does not show that the Nurse Defendants were deliberately indifferent to Morris's serious medical needs, or in any way refused to treat him, ignored his complaints, intentionally treated him incorrectly, or otherwise clearly evinced a wanton disregard for any serious medical needs. *Domino*, 239 F.3d at 756. It is clear that the Nurse Defendants and other medical staff provided Morris with substantial medical treatment for his injuries. As his own pleadings show, Sides took Morris to a medical triage area immediately after the use of force incident where both Sides and McCaffity assessed Morris for his injuries, and Morris later had X-rays ordered of his hand and eye, followed by a visit to an orthopedist, who splinted his hand. ECF No. 38 at 10–12; No. 109 at 4. The Nurse Defendants submitted additional evidence in the form of medical records that show a more extensive course of treatment for Morris, including orders for ice packs and pain medication; examinations by multiple doctors, including an orthopedic surgeon; and X-rays of his hand, eye socket, and ankle, the last of which was repeated because of renewed complaints. ECF No. 90-2. There is ample evidence in the record that the Nurse Defendants, along with the other medical providers who saw Morris, did not act with deliberate indifference.

Even had Morris shown that the Nurse Defendants or other medical providers refused to treat him, he cannot recover on this claim because he failed to show a serious medical need. The superficial injuries to Morris's face and head did not give rise to a serious medical need. With respect to his broken finger, Morris admits that medical providers ordered X-rays and that his hand was splinted after he saw an orthopedic doctor. ECF No. 109 at 4. Similarly, though Morris disputes the Nurse Defendants' evidence that he only complained of his ankle pain a month after the incident, he does not dispute that a medical provider did in fact treat him for this injury at that time. *See id.* at 4–5; ECF No. 90-2 at 32–33. Though treatment came more slowly than Morris wanted, disagreement with medical treatment cannot support a claim for deliberate indifference. *Gobert*, 463 F.3d at 346. Morris also complains that the Defendants refused to treat him for an undiagnosed concussion, but he has provided no evidence from a witness qualified to make a medical diagnosis that he may have had a concussion, and there is no evidence in the medical records of the alleged concussion. *See Gobert*, 463 F.3d at 345 n.12 ("A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."); *see Sanford v. Tarrant County Sheriff's Dept.*, 628 Fed. App'x 301, 302 (5th Cir. Jan. 6, 2016) (affirming summary judgment where there was no evidence in the medical records that the plaintiff suffered a concussion). The Nurse Defendants are entitled to summary judgment on Morris's claims of deliberate indifference.

In his Second and Final Amended Complaint, Morris phrases his claim of deliberate indifference in terms of a conspiracy by the Nurse Defendants with the other named Defendants to deny care or retaliate against him. Members of the same collective entity, such as employees of the same company, are construed as the same person under the intra-corporate conspiracy doctrine. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Because a corporation or similar collective

entity cannot conspire with itself, there is no conspiracy where all members of the alleged conspiracy are part of the same entity. *Id.* All of the Defendants in this case are employees of TDCJ. The Fifth Circuit has held that the intra-corporate conspiracy doctrine applies to the TDCJ. *Reynosa v. Wood*, 134 F.3d 369 (5th Cir. 1997). The Defendants are construed as the same person for purposes of conspiracy, and therefore there can be no conspiracy among them.

**III.     The Nurse Defendants are entitled to qualified immunity on their claims because they did not commit a constitutional violation.**

The doctrine of qualified immunity protects government officials from suit and "from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once an official asserts qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017).

When determining whether an official can claim qualified immunity, courts engage in a two-step analysis. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). "First, they assess whether a statutory or constitutional right would have been violated on the facts alleged." *Id*. "Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that '*every* reasonable official would understand that what he is

doing violates the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd*, 563 U.S. at 741.

As noted previously in this Opinion, the Defendants did not commit the alleged constitutional violation of deliberate indifference. *See supra* Part II. Therefore the Defendants have satisfied the first prong and are entitled to qualified immunity. *See Pearson*, 555 U.S. 223, 236; *Collier v. Montgomery*, 569 F.3d 214, 219–20 (5th Cir. 2009) (holding that defendants were entitled to qualified immunity based only on the first prong).

## CONCLUSION

After considering the pleadings and applicable law, the Court **GRANTS** Defendants Shea Sides and Juli McCaffity's Motion for Summary Judgment (ECF No. 90).

It is so **ORDERED** on May 30, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE