## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **TODRICK MORRIS,** | § | |
| **TDCJ No. 854732,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:17-CV-034-O-BP** |
| | § | |
| **LT. ANTHONY BRIA,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND OPINION

Before the Court are Defendants Bria, Cates, Goatley, Odom, Szczepinski, Arrieta, Jr., Cerda, Cossey and Morris's Motion for Summary Judgment (ECF No. 97), filed February 17, 2018, with Brief (ECF No. 99) in support; and Plaintiff's Response to Defendants Bria, Cates, Goatley, Odom, Szczepinski, Arrieta, Jr., Cerda, Cossey and Morris's Motion for Summary Judgment (ECF No. 111), filed April 9, 2018. The parties consented to have the United States Magistrate Judge conduct all proceedings in this case, up to and including trial and order of final judgment. ECF No. 85. After considering the pleadings and applicable law, the Court **GRANTS in part and DENIES in part** Defendants Bria, Cates, Goatley, Odom, Szczepinski, Arrieta, Jr., Cerda, Cossey and Morris's Motion for Summary Judgment (ECF No. 97).

## BACKGROUND

### I. Factual Background

Plaintiff Todrick Morris ("Morris") brings this action under 42 U.S.C. § 1983 for violation of his constitutional rights. ECF No. 38 at 3–4. He claims excessive force, retaliation for engaging in protected conduct, failure to protect, conspiracy, and deliberate indifference to his medical needs. *Id.*

Morris is an inmate in custody of the Texas Department of Criminal Justice ("TDCJ") and is currently incarcerated in the Allred Unit in Iowa Park, Texas. ECF No. 38 at 1. Defendants Lt. Anthony Bria ("Bria"), Sgt. Tommy Cates ("Cates"), Sgt. Larry Goatley, Jr. ("Goatley"), Justin Odom ("Odom"), Scott Szczepinski ("Szczepinski"), Richard Arrieta, Jr. ("Arrieta"), John M. Cerda, Jr. ("Cerda"), Michael A. Cossey ("Cossey"), and Patrick W. Morris ("Officer Morris") (collectively, the "Guard Defendants") are correctional officers at the Allred Unit. ECF No. 99 at 4. Defendants Shea Sides ("Sides") and Juli McCaffity ("McCaffity") (collectively, the "Nurse Defendants") are nurses at the Allred Unit. ECF No. 90-1 at 3.

The following facts are taken from Morris's Second Amended Complaint, which Morris verified by a signature to be true under penalty of perjury. ECF No. 38 at 16.

On February 18, 2017, Bria, Cates, and Goatley allegedly came to Morris's cell at Pod J of the Allred High Security Unit and confronted Morris about filing grievances. *Id.* at 5. According to Morris, they became angry with him during the confrontation and told him that they were going to beat him. *Id.* They then left the pod. *Id.*

About forty-five minutes later they returned to his cell with a five-man extraction team consisting of Arrieta, Szczepinski, Odom, Officer Morris, and Cossey (collectively the "Team Defendants"). *Id.* Cerda also came with them, as the video camera operator. *Id.* at 6. Morris claims he was in compliance with all TDCJ rules and regulations up to this point. *Id.* When he saw the team, and due to the threats that Bria, Cates, and Goatley had allegedly made, Morris states that he feared for his life and believed he was about to be harmed. *Id.* He then covered his cell door and windows and placed a magazine in the cell door to prevent the door from being able to be opened. *Id.* Morris believed that, because of his actions, the correctional officers would be required to summon a higher-ranking officer to the scene, and Morris would then be able to communicate

his fear of harm to the higher ranking official. *Id.* However, no higher-ranking official came to the scene. *Id.*

Goatley sprayed chemical agents three times through the food slot in the cell door. *Id.* Morris claims that after each spray, he went to his cell door, moved the obstruction he had put there, and told Goatley and Bria that he would comply with orders to submit to a strip search and hand restraints. *Id.* Morris again requested the presence of a higher ranking official. *Id.* According to Morris, Bria and Goatley ignored Morris's attempts to surrender himself and instead forced the cell door open. *Id.* The Team Defendants then went into Morris's cell. *Id.* One of the Team Defendants, purportedly Officer Morris, struck Morris with a shield. *Id.*; ECF No. 111 at 4. When he was struck, Morris was standing in the doorway area of his cell by the shower. ECF No. 38 at 6.

Morris alleges that he was then forced further back into the cell toward the shower and toilet area, and the Team Defendants struck him several times in the face and head. *Id.* at 7. He claims that he was not resisting at this point and started to dive to the cell floor to surrender. *Id.* He was then slammed or tackled face-down to the floor in the toilet and shower area, with his head near the front of the cell door opening and wall fixture. *Id.* Morris then placed his hands behind his back to surrender and loudly stated that he was not resisting. *Id.* At this point the Team Defendants allegedly punched him in the head and face, choked him, banged his head into the floor twice, gouged his eyes, and bent his hands, arms, and legs. *Id.* The Team Defendants then placed Morris in hand restraints. *Id.* Morris alleges that, during the incident, the Team Defendants falsely called out "quit resisting" when he was not resisting. *Id.*

Morris alleges that Bria and Goatley intentionally stood in the cell door to obstruct the view of the video camera, which allowed the Team Defendants to assault Morris. *Id.* at 8. Morris alleges

that Bria then stepped into Morris's cell and struck Morris with a chemical agent canister in Morris's left-eye area and sprayed Morris with the chemical agent. *Id.* Morris alleges that he was still not resisting. *Id.* Morris claims that he was continually struck and choked for several more minutes, during which period he lost consciousness twice. *Id.*

Bria then called Cerda to come closer to the cell with the video camera. *Id.* The Team Defendants cut off Morris's clothing and took him out of his cell onto the walkway to stand facing the wall. *Id.*

Bria and Goatley then summoned medical personnel to the scene. *Id.* Sides arrived, approached Morris, and asked him if he had any injuries. *Id.* Morris responded that he had injuries to the left and right sides of his face, his left eye, his head, and his left hand. *Id.* at 9. Morris claims that he was dizzy and disoriented from the attack and had several visible injuries, including swollen lips as well as swelling and bleeding on his head and face. *Id.* Morris alleges that Sides medically cleared Morris on the video recording and told Goatley that Morris was okay. *Id.* Morris alleges that Sides did not assess his injuries or their severity at this time. *Id.* According to Morris, several other inmates then began cursing and yelling at Sides from their cells that she needed to give Morris medical treatment and they were witnesses to her denying care to Morris. *Id.* Goatley took photos of Morris and stated on camera that Sides had medically cleared Morris to be placed back into his cell once it was clear of all state and personal property. *Id.* The other inmates continued to yell at Sides. *Id.* Morris alleges that Sides then began to whisper to Goatley. *Id.* She then reconsidered her decision to medically clear Plaintiff. *Id.*

Bria and Goatley then escorted Morris away from his cell to the 2-Row medical triage area. *Id.* at 10. McCaffity joined Sides there. *Id.* Morris then informed the Nurse Defendants of the injuries to his face, left eye, left hand, lips, mouth, and head. *Id.* His left eye was swollen shut. *Id.*

Morris also told the Nurse Defendants that he had a head injury and a possible concussion, as well as dizziness, nausea, and blurred vision. *Id.* According to Morris, the Nurse Defendants assessed the swelling and lacerations on his head, his swollen left eye and the left side of his face, and his lips and mouth. *Id.* Morris then asked the Nurse Defendants if they could flush the chemical agents from his eyes, but they refused to do so. *Id.* Morris alleges that the Nurse Defendants did not assess his left-hand injury or his possible head injury and concussion with its possible symptoms. *Id.* at 11. The Nurse Defendants then medically cleared Morris without providing any treatment. *Id.*

Bria, Goatley, and the Team Defendants returned Morris to his cell. *Id.* There the Team Defendants laid him on the floor and removed his hand restraints. *Id.* Morris alleges that, while they were removing his restraints, they bent, applied excessive pressure to, and twisted his legs, ankles, hands, and arms. *Id.* Morris claims that he was not resisting at this point. *Id.* The guards exited his cell, and Morris lay on the floor until the cell door was secured shut. *Id.* Morris then told Bria and Goatley that the Team Defendants had further injured his left hand and right leg and ankle when removing the restraints. *Id.* Morris alleges that Bria and Goatley ignored Morris's complaints and terminated the use-of-force incident. *Id.*

Morris alleges that Bria, Goatley, and Cates then disconnected Morris's air vents, shut off his cell's water, and placed a mattress directly in front of the cell, which prevented fresh air circulation. *Id.* Morris also alleges that Bria threatened Morris's neighbor in cell J-228 with a beating if the neighbor assisted Morris in any way. *Id.* at 11–12. Morris alleges that after he was left in his cell, he bled for hours, was dizzy and vomited from the head trauma, had burning in his eyes from the chemical agents, and was without pain medication for over forty-eight hours. *Id.* at 12. Morris claims that the guards ignored him when he told them he had vomited. *Id.*

Morris submitted a sick call request on February 18, 2017, after the use-of-force incident. *Id.* On February 20, 2017, unit medical provider Lawrence Doty saw Morris for medical treatment. *Id.* Morris claims that at this time he still had dried blood on his body, and he had swelling on his left eye, face, lips, head, right leg and ankle, and left hand. *Id.* Lawrence Doty ordered X-rays of Morris's face and left hand. *Id.* The X-rays revealed that Morris had a fracture "involving the proximal metaphysis of the second proximal phalanx on the left hand." *Id.* Morris was issued pain medication for the first time at this point. *Id.* Morris alleges that his right leg and ankle as well as his head trauma remained unassessed. *Id.* On the evening of February 20, 2017, Morris informed Sides of the unassessed conditions, and Sides instructed him to submit a sick call, which Morris did on that date. *Id.* Morris does not state the results of this second sick call. *See id.* Morris alleges that he has permanent deformities to his left hand, a loss of range of motion and continuous pain in his left hand, constant blurred vision, vision loss in his left eye, damage to his teeth, permanent scarring to his head, constant headaches, and continuous pain and swelling in his right leg and ankle. *Id.*

Morris attached to his verified complaint a signed affidavit from another prisoner, Porfirio Elguezabal, ("Elguezabal"). ECF No. 38-1. Elguezabal swears that he was a witness to the use-of-force incident and the surrounding events, and his statements support Morris's statements in the complaint. *Id.* at 2–3. Elguezabal does not make any statements concerning the period Morris spent in the 2-Row medical triage unit. *See id.*

## II.    Procedural Background

Morris filed his original complaint on March 20, 2017. ECF No. 1. He filed a first amended complaint on May 15, 2017. ECF No. 18. He filed his "Second and Final Amended Complaint" on June 27, 2017. ECF No. 38. In this second amended complaint, Morris stated the following

claims: the Guard Defendants used excessive force against him; Bria, Goatley, and Cates conspired to deny him his constitutional rights; Cerda conspired with all the other Defendants to deny him his constitutional rights; Goatley, Cates, and Cerda did not intervene to stop the other Defendants' excessive use of force; the Nurse Defendants conspired to deprive him of his constitutional right to medical treatment; and the Nurse Defendants were deliberately indifferent to his serious medical needs. *Id.* at 13–15.

The Guard Defendants filed their Motion for Summary Judgment on February 20, 2018. ECF No. 97. They attached an appendix containing the use-of-force report, Morris's medical records, and video and photographic evidence of the use-of-force incident. ECF No. 99-1. Morris filed a response to the Motion for Summary Judgment on April 9, 2018. ECF No. 111. He attached an appendix containing an affidavit from himself, affidavits from other prisoners who witnessed the incident, photographs of his injuries, and part of the use-of-force report. ECF No. 111-1. The Guard Defendants did not file a reply.

## LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984,

991 (5th Cir. 2001). To meet this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The court must construe all facts and inferences in the light most favorable to the nonmoving party when considering a motion for summary judgment. *See Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults v. Conoco, Inc*., 76 F.3d 651, 655 (5th Cir. 1996). The citations to evidence must be specific, and "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Local Civil Rules of the Northern District of Texas 56.5(c).

Courts must employ summary judgment cautiously. *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980). In particular, in prisoner *pro se* cases courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Id.* at 311; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that a *pro se* plaintiff's pleadings should be liberally construed). Courts should take into account that "[i]ndigent prisoners are hampered in their access to the proof necessary to ward off summary judgment." *Murrell*, 615 F.2d at 310.

**ANALYSIS**

The Guard Defendants make two arguments in their Motion for Summary Judgment: (1) that they are entitled to qualified immunity for each of Morris's claims and (2) that they are entitled to Eleventh Amendment immunity to the extent that they are sued in their official capacities.

I.    **Summary judgment is granted to the Guard Defendants on Morris's claims for retaliation and conspiracy, but is denied on his claims for excessive force and bystander liability because there exists a dispute of material fact.**

The doctrine of qualified immunity protects government officials from suit and "from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once an official asserts qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017).

When determining whether an official can claim qualified immunity, courts engage in a two-step analysis. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). "First, they assess whether a statutory or constitutional right would have been violated on the facts alleged." *Id*. "Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that '*every* reasonable official would understand that what he is doing violates the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The

Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd*, 563 U.S. at 741.

> **A.** **There is a dispute of material fact concerning whether the Guard Defendants are entitled to qualified immunity on Morris's claim for excessive force.**

A prisoner's claim of excessive force under 42 U.S.C. § 1983 is a claim that the defendant violated the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When evaluating the first prong of the qualified immunity analysis, whether the defendant's actions violated the plaintiff's constitutional rights, the "core judicial inquiry" in an excessive force claim is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).

The Supreme Court set out five factors for courts to evaluate in an excessive force claim: (1) "the extent of injury suffered," (2) "the need for application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks omitted). Consideration of all five factors is not necessary, and each case should be judged on its own facts. *Benoit v. Bordelon*, 596 Fed. App'x 264, 268 (5th Cir. 2015). However, a court can err by not considering any of the factors or not considering factors for which there is relevant evidence. *Id.*

> **i.** **The extent of injury suffered weighs in favor of denying summary judgment.**

In order to support an excessive force claim, the plaintiff must demonstrate that the injury was more than a *de minimis* physical injury, but "there is no categorical requirement that the

physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). Not "every malevolent touch by a prison guard gives rise to a federal cause of action," and *de minimis* uses of physical force can only support an excessive force claim if it was of a sort "'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The ultimate inquiry for an excessive force claim, however, is not the extent of the injury but whether the force was excessive, and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

The Guard Defendants agree that Morris received injuries to his left eye, head, lip, and left hand, including a fracture of one of his fingers. ECF No. 38 at 9–12; No. 99 at 12. Morris additionally averred, under oath, that the Defendants' use of force caused him to bleed for hours, gave him a possible concussion, made his eyes burn from the chemical agents, and made him dizzy and nauseous to the extent that he vomited in his cell the day of the incident. ECF No. 38 at 11–12; No. 111-1 at 12–16. Taken together, these injuries are more than *de minimis*. *Hudson v. McMillian*, 503 U.S. at 10 ("[T]he blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes.").

The Guard Defendants concede that Morris suffered injuries from the use of force. ECF No. 99 at 13. Instead they argue in response that their use of force was justified by Morris's actions. *Id.* This argument is not relevant to this factor, and the Court will consider it in a later section. Construing all facts and inferences in the light most favorable to Morris, as the nonmovant, it is clear that his injuries were more than *de minimis*, and this factor weighs in favor of denying summary judgment.

### ii. The need for application of force weighs against summary judgment.

The Guard Defendants argue that there was a need for them to apply the force involved in the incident because Morris would not comply with orders to remove the obstruction he had placed over his cell windows. ECF No. 99 at 14–15. The Guard Defendants rely to a large extent on a submitted video of part of the incident. *Id.* at 11–15. They argue that the Court should reject Morris's version of the facts and accept the video, pursuant to the Supreme Court's opinion *Scott v. Harris*, in which the court rejected the nonmovant's version of the facts on summary judgment because the record—in particular, a video of the incident—blatantly contradicted the nonmovant's story. 550 U.S. 372, 380 (2007). The court held in *Scott* that the nonmovant's version of the events critical to the factual issue was "so utterly discredited by the record that no reasonable jury could have believed him." *Id.* at 380–81. However, *Scott* only allows a court to discredit a summary judgment nonmovant's version of the facts when the a video blatantly contradicts the nonmovant's version, and not where the video is missing key events or facts, or where the video only offers some support for the movant's version of the facts. *Comeaux v. Sutton*, 496 Fed. App'x 368, 371–73 (5th Cir. Oct. 11, 2012) (reversing a district court's grant of summary judgment because it failed to view the facts and inferences in the light most favorable to the nonmovant).

The DVD that the Guard Defendants submitted is split into three chapters. ECF No. 99-1, App'x C. The first, labelled "UOF Video," is approximately one minute long, and shows one guard announcing the reason for the use of force—because Morris threw urine at staff and covered his cell windows—to the assembled Team Defendants in a location away from Morris's cell. ECF No. 99-1, App'x C-1 [hereinafter, "Video 1"]. The video individually identifies the Team Defendants, as well as Cerda as the camera operator and Sides as the medical attendant. *Id.* The second, labelled "UOF Photos," contains five still images taken after the Defendants removed Morris from his cell.

ECF No. 99-1, App'x C-2. The third, labelled "Video 2," is approximately forty-one minutes long. ECF No. 99-1, App'x C-3 [hereinafter, "Video 2"]. Video 2 begins with the Team Defendants assembled outside Morris's cell, continues through the Team Defendants' entrance into the cell, shows Morris's trip to the Row-2 medical triage, and ends after the Defendants returned Morris to his cell. *Id.*

An off-camera individual in Video 1 announces that Team Defendants are assembled to use force against Morris because he had thrown urine on staff and covered his cell windows. Video 1 at 00:15–30. Video 2 appears to show, though only partially because one guard is standing in front of the door, that the cell windows are uncovered at the beginning of the video. Video 2 at 00:01. Morris covers the cell windows around the thirty-second mark, and the windows remain covered for most of the first twelve minutes of the video, until the Defendants force open the cell door. *Id.* at 00:30–11:44. During this period, Goatley instructs Morris multiple times to uncover his door. *Id.* When Morris does not comply, the Team Defendants force his door open, enter his cell, and take Morris to the ground. *Id.* at 11:44–46.

Morris avers that he told Goatley and Bria that he would comply with orders, but he does not dispute that he did not in fact comply and remove the obstructions from his door or windows, except temporarily to talk to Goatley and Bria after each time Goatley sprayed Morris through the foodslot. ECF No. 38 at 6. It is reasonable that guards would need to take disciplinary action and use force against a prisoner who refused to comply with orders, blocked his cell door, and covered the windows to his cell. Even taking Morris's version of the facts as true, the Guard Defendants had a clear need to apply force in opening his cell, removing the obstruction, and placing Morris in restraints.

However, the Court's inquiry does not end with the initial use of force, because any unacceptable use of force can be a constitutional violation, even if others in the same set of circumstances are not violations. *See Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999), *decision clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999) (finding that the first instance of the defendant choking the plaintiff was not a cognizable constitutional violation as it was pursuant to a lawful search, but the second choking was not). Morris alleges that he was attempting to surrender when the guards entered his cell and was not resisting the Team Defendants when he was on the ground. ECF No. 38 at 7. He avers that, even though he was not resisting, the Team Defendants punched him in the head and face, choked him, banged his head into the floor twice, gouged his eyes, and bent his hands, arms, and legs over a period of several minutes. *Id.* at 8. Morris also avers that Bria struck Morris with a chemical agent canister and sprayed Morris with the chemical agent, though he was not resisting. *Id.* at 8. Sworn affidavits from other inmates, provided by Morris, support many of Morris's allegations. ECF No. 38-1; No. 111-1 at 1–4.

The Guard Defendants respond that the video clearly contradicts Morris's story, and that Morris threw punches at them when they entered the cell and continued to resist even while on the ground, necessitating further force. ECF No. 99 at 14–15. The Guard Defendants also cite as evidence their own statements from the Use-of-Force Report, but the Court cannot credit disputed testimony from the movants in a motion for summary judgment. *Id.*; *Comeaux v. Sutton*, 496 Fed. App'x at 371.

Contrary to the Guard Defendants' argument, the video does not clearly show what occurred within the cell after the Team Defendants entered. The video camera operator filmed the majority of the incident, including the first two minutes after the guards enter the cell, from the walkway across from the cell and on the other side of multiple railings and a stairwell. Video 2 at

00:01–13:43. Both the cell wall and two guards standing outside of the cell obscure much of the cell for most of this period, and Morris is not visible at all after the first few seconds of the Team Defendants' entry. *Id.* at 11:44–13:43. It does appear that Morris's arm moved toward the Team Defendants at one point, but it is not obvious that the arm movement was a punch, as most of his body is obscured in the video. *Id.* at 11:44–45. Nor is it clear whether Morris was resisting, as the Team Defendants completely covered him from view while he was on the ground. *Id.* at 11:46–13:43. It is obvious from the video that Bria sprayed Morris with a chemical agent, but it is not apparent whether Bria struck Morris with the chemical agent canister. *Id.* at 12:00–02. The video does, however, clearly show that the Guard Defendants did not twist Morris's limbs or otherwise apply excessive force when removing his restraints. *Id.* at 37:38–39:19. The video ends before showing whether Morris developed symptoms, such as vomiting, from the injuries he allegedly suffered.

The video does not resolve key facts relating to Morris's claims. *See Comeaux v. Sutton*, 496 Fed. App'x at 371–72 (reversing the district court's decision that the second *Hudson* factor weighed in favor of the defendants because the majority of the disputed incident was not videotaped). The video in this case does not show the events that led up to the use of force; whether Morris struck any of the Guard Defendants; to what extent he resisted while on the ground; whether the Guard Defendants choked, struck, or otherwise applied force while Morris allegedly was not resisting; whether Bria struck Morris with the canister; or Morris's condition for the forty-eight hours after the Guard Defendants returned him to his cell. Because the video does not "utterly discredit" Morris such "that no reasonable jury could have believed him," the law requires that the Court take as true Morris's version of the facts. *Scott*, 550 U.S. at 380–81.

Most importantly, Morris argues that there was no need for any force to be applied to him while he lay on the ground without resisting, a fact that is not clear from the video. ECF No. 111 at 4–7. However, that is when the Guard Defendants allegedly applied the majority of the objected-to force. *Id.* at 4–5. "Once a prisoner has been subdued, using gratuitous force on him is unreasonable." *Preston v. Hicks*, No. 16-30961, 2018 WL 832921, at *2 (5th Cir. Feb. 12, 2018) (citing *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016)). Construing the facts and inferences in Morris's favor, the Court finds that the second *Hudson* factor weighs against summary judgment.

### iii. The relationship between the need for force and the amount of force used weighs against summary judgment.

The finding as to the third *Hudson* factor follows from the Court's analysis of the previous factor. The force used in the first stage of the incident—administering chemical agents, entering Morris's cell, and bringing him to the ground to place him in restraints—was proportionate to the need for force. However, taking Morris's version of the facts as true, the force used in the second stage when Morris allegedly lay on the ground was disproportionate because, according to Morris, he was not resisting. It was at this point that the Guard Defendants allegedly applied most of the injurious force: punching, choking, gouging, and twisting his limbs, which resulted in bleeding, swelling, and a possible concussion. ECF No. 38 at 7–8. The extent of injury may provide some indication of the amount of force applied. *Wilkins*, 559 U.S. at 37. A jury could reasonably find that the force at this second stage of the incident was disproportionate, and this factor weighs against summary judgment.

### iv. The threat reasonably perceived by the responsible officials weighs against summary judgment.

The Guard Defendants argue that they reasonably perceived Morris to be a threat because he had hidden himself from view before they entered the cell, and because he assaulted the Team Defendants when they entered. ECF No. 99 at 16. However, their argument fails for much the same reasons as in the prior elements. While there is no fact issue as to whether the Guard Defendants perceived a threat when entering Morris's cell, he also avers that they used unnecessary force while he lay on the ground, allegedly not resisting or posing a threat. ECF No. 38 at 7–8. The Guard Defendants again rely on their own affidavits that Morris assaulted them, but the Court cannot credit the disputed testimony of the movant. ECF No. 99 at 16; *Comeaux*, 496 Fed. App'x at 374 (finding that accepting the defendants' assertions in their evidence "improperly decides an issue of credibility, namely, the disputed genuine question of material fact about whether [the plaintiff] physically resisted"). At the summary judgment stage Morris's version of the facts, when disputed, must be accepted. A jury could find that the responsible officials did not reasonably perceive a threat from a prisoner who was lying face down and was not resisting.

### v. The efforts made to temper the severity of a forceful response weighs for summary judgment.

The parties agree that the Guard Defendants made numerous attempts to gain Morris's compliance before entering his cell. ECF No. 38 at 5; ECF No. 99 at 16–17. As indicated by the video, the Guard Defendants waited at least eleven minutes before entering his cell. Video 2 at 00:01–11:44. Goatley spoke with Morris and sprayed chemical agents through his cell's foodslot three times in an attempt to gain compliance without a need for forced entry. *Id.*; ECF No. 38 at 5; ECF No. 99 at 16–17. Morris maintains that he attempted to surrender to Goatley on these occasions, but he does not state that he removed the obstructions on his windows or door, which

necessitated the Guard Defendant's forceful entry. ECF No. 38 at 5. The Guard Defendants made clear efforts to avoid and temper the severity of the forced entry that led to the disputed claim of excessive force. This factor weighs in favor of summary judgment.

> ### vi. In conclusion, disputes of material fact exist that preclude summary judgment on the issue of qualified immunity on Morris's excessive force claim.

Of the five factors in the *Hudson* analysis, four weigh against summary judgment regarding the first prong of the qualified immunity analysis: whether the Guard Defendants committed a constitutional violation by allegedly beating a prisoner who was not resisting. As to the second prong, Fifth Circuit case law holds that using gratuitous force against an inmate who was not resisting can be a violation of clearly established statutory or constitutional rights of which a reasonable person would have known. *Preston*, No. 16-30961, 2018 WL 832921, at *2 (5th Cir. Feb. 12, 2018); *Kitchen v. Dallas County, Tex.*, 759 F.3d 468, 479 (5th Cir. 2014), *abrogated on other grounds by Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015) ("[W]e conclude that Defendants–Appellees had reasonable warning that kicking, stomping, and choking a subdued inmate would violate the inmate's constitutional rights under certain circumstances."). There exist multiple disputes of material fact as to whether the Guard Defendants used excessive force, including how extensive Morris's injuries were, whether Morris resisted, and whether and to what extent the Guard Defendants beat or struck him while he was on the floor of his cell. As a result, this Court also cannot hold that the Guard Defendants are entitled to summary judgment as a matter of law on the second prong of the qualified immunity analysis.

Therefore this Court cannot grant summary judgment based on qualified immunity as a matter of law. However, this decision is not a ruling that the Guard Defendants are not entitled to qualified immunity as a matter of law in this case, and therefore this Opinion is not immediately

appealable. *Oporto v. Moreno*, 445 Fed. App'x 763, 765 (5th Cir. 2011) (quoting *Naylor v. State of La., Dept. of Corr.*, 123 F.3d 855, 857 (5th Cir. 1997)) ("'[O]rders denying qualified immunity are immediately appealable only if they are predicated on conclusions of law, and not if a genuine issue of material fact precludes summary judgment on the question of qualified immunity.'"). Decisions on disputed issues of material fact, such as those that exist in this case, are reserved for the fact finder.

> **B.**  **Summary judgment should be granted to the Guard Defendants on Morris's retaliation claim, as he has not shown that the use of force would not have occurred but for a retaliatory motive.**

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citing *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999)). "The law of this circuit is clearly established . . . that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).

"The inmate must allege more than his personal belief that he is the victim of retaliation," and conclusory allegations of retaliation are not sufficient to state a claim. *Jones*, 188 F.3d at 325. "To prevail on a retaliation claim, an inmate 'must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'" *Bibbs*, 541 F.3d at 272–73 (quoting *Woods*, 60 F.3d at 1166). To show causation, the inmate must show that, but for the retaliatory motive, the complained of incident would not have occurred. *Higgins v. Morris*, 673 Fed. App'x 376, 379 (5th Cir. 2016) (citing *Woods*, 60 F.3d at 1166).

Morris alleges that the Guard Defendants engaged in their use of force because he filed grievances. ECF No. 38 at 5, 13. However, Morris does not specify what grievances he filed or why these specific defendants wanted to retaliate against him for filing those grievances, rendering his allegations conclusory. *See id.* As the Guard Defendants argue, Morris does not provide evidence that the use of force incident would not have occurred but for the retaliatory motive. ECF No. 99 at 18. Morris does not make any counterargument in his response. *See* ECF No. 111. In his sworn complaint, Morris admits that he covered his windows and blocked his door from opening. ECF No. 38 at 6. The fact that Morris covered his windows was one of the two reasons that the Guard Defendants announced for the use of force, prior to departing for Morris's cell. Video 1 at 00:12–38. The summary judgment evidence shows that the allegedly retaliatory incident would have occurred for the simple reason that Morris had obstructed his cell door and windows, without any retaliatory motive. Summary judgment for the Guard Defendants is therefore warranted on Morris's claim of retaliation.

### C. Summary judgment should be granted to the Guard Defendants on Morris's conspiracy claim, as the claim is barred by the intra-corporate conspiracy doctrine.

In the context of § 1983, "[t]he elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)). Mere conclusory allegations of conspiracy, absent reference to material facts, cannot state a substantial claim of federal conspiracy. *Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (en banc). Members of the same collective entity, such as employees of the same company, are construed as the same person under the intra-corporate

conspiracy doctrine. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Because a corporation or similar collective entity cannot conspire with itself, there is no conspiracy where all members of the alleged conspiracy are members of the same entity. *Id.*

Morris provides no material facts that establish a conspiracy. He states only that the Guard Defendants acted together during the incident and that Cerda intentionally operated the video camera to hide the alleged abuse from view. ECF No. 38 at 13–14. These are mere conclusory allegations. In addition, all of the Defendants in this case are employees of TDCJ. The Fifth Circuit has held that the intra-corporate conspiracy doctrine applies to the TDCJ. *Reynosa v. Wood*, 134 F.3d 369 (5th Cir. 1997). The Defendants are construed as the same person for purposes of conspiracy, and therefore there can be no conspiracy among them.

**D.    There is a dispute of material fact concerning whether Goatley, Cates, and Cerda are entitled to qualified immunity as bystanders on Morris's claim for excessive force.**

"There is bystander liability for an 'officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force . . . .'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). The Fifth Circuit has stated that this holding is consistent with multiple other circuits' test for bystander liability: "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley*, 726 F.3d at 646 (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)) (citing additional cases from the Seventh Circuit and Third Circuit). A court should also consider whether the officer acquiesced in the alleged constitutional violation. *Whitley*, 726 F.3d at 646.

Morris accuses Goatley, Cates, and Cerda of bystander liability deriving from the other Defendants' use of excessive force. ECF No. 38 at 14–15 (citing *Kitchen*, 759 F.3d at 480–81). The parties agree that Goatley and Cerda were at the scene of the alleged use of excessive force, and the Guard Defendants do not argue that Cates was not present. *See id.* at 5–6, 14–15; ECF No. 99 at 4–6, 20–27. Goatley, Cates, and Cerda's central argument for why the Court should grant summary judgment is that there were no constitutional violations for an officer to know of or acquiesce to. ECF No. 99 at 20–27. However, the Court has already determined that there is a fact issue whether the Guard Defendants used excessive force against Morris. *See supra* Part I.A. Thus, construing his complaint liberally, Morris has raised a fact issue as to whether Goatley, Cates, and Cerda have bystander liability deriving from the excessive force claim. *See Estelle*, 429 U.S. at 106 (holding that a *pro se* plaintiff's pleadings should be liberally construed). This is not a ruling, however, that Goatley, Cates, and Cerda are not entitled to qualified immunity as a matter of law in this case, and therefore this Opinion is not immediately appealable. *Oporto*, 445 Fed. App'x at 765.

## II.    The Eleventh Amendment bars Morris's claims against the Guard Defendants to the extent that they are sued in their official capacity.

Under the Eleventh Amendment, states may not be sued in federal court unless they unequivocally consent to the suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984). This immunity extends to state agencies and, if the relief sought would operate against the state, to state officials. *Id.* at 101. Title 42 U.S.C. § 1983 does not override the States' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). However, the Eleventh Amendment does not bar the recovery of damages from state officials sued for violations of § 1983 in their personal capacities. *See, e.g., Smith v. Wade*, 461

U.S. 30, 34–35 (1983) (upholding an award of punitive and compensatory damages against prison officials in a § 1983 suit); *Stokes v. Delcambre*, 710 F.2d 1120, 1126 (5th Cir. 1983) (same); *Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 773 (N.D. Miss. 2012), *aff'd*, 592 Fed. App'x 260 (5th Cir. 2014) (holding that the Eleventh Amendment does not bar monetary relief in a § 1983 suit as any relief would "impact only the individually named Defendants").

Morris states that he is suing all Defendants in their individual and official capacities. ECF No. 38 at 5. The Guard Defendants work for TDCJ, a state agency. ECF No. 99 at 25. Therefore they are entitled to Eleventh Amendment immunity. *Pennhurst*, 465 U.S. at 101. Morris cannot recover damages from the Guard Defendants in their official capacities.

## CONCLUSION

After considering the pleadings and applicable law, the Court **GRANTS in part and DENIES in part** Defendants Bria, Cates, Goatley, Odom, Szczepinski, Arrieta, Jr., Cerda, Cossey and Morris's Motion for Summary Judgment (ECF No. 97). The Court concludes that summary judgment cannot be granted to these Defendants as to Morris's claims for excessive force and bystander liability. The Court does however conclude that summary judgment should be granted to these Defendants as to Morris's claims for retaliation and conspiracy, and for all claims against them in their official capacities. The Court dismisses these claims with prejudice.

It is so **ORDERED** on May 30, 2018.


_Hal R. Ray, Jr._____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE